You may be seated. The second case of the morning, Hurlbert v. National Union Fire Insurance Company of Pittsburgh. For the appellant, Mr. Graham, for the athlete, Mr. Sanders, you may proceed. Good morning, Your Honors. May it please the Court, I'm William Graham, appearing on behalf of Wilbur and Hurlbert and Sherry Harrington, the plaintiff appellants. The primary issue before the Court today is one of equity. Does justice favor the plaintiff being able to modify a consent order to accurately reflect the intention of the parties? The plaintiffs submit that justice does favor such a modification. Now, I know the Court has reviewed all of the briefs and I won't repeat the facts unless the Court requests some clarification. Given that I've heard nothing, I will move on to the arguments. Now, there are four orders that the plaintiffs contend are the product of an abuse of discretion in the lower court. The first is the granting of National Union's petition to intervene. Now, the lower court and National Union both rely upon this Court's ruling in a previous matter regarding standing. Now, this Court did find that National Union had standing to pursue intervention. However, finding that standing is present is not a finding of intervention. There was no motion or petition for intervention before the Court in the prior action. The plaintiffs submit that the lower court failed to assess one of the key components of a petition to intervene, which is the timeliness of the motion. At the time that National Union pursued its petition to intervene, it had known of this action for more than three years. In addition, it was aware of the modification order in 2007 for more than two years. Plainly, National Union should have and could have pursued intervention anytime within that three-year time frame. The fact that it didn't plainly shows that it didn't satisfy the requirements of a petition to intervene. The second... On the question of jurisdiction, were you required to appeal the Court's decision to allow the intervention within 30 days, and did you do so? Because I asked that question, I think the answer would be no. That is absolutely correct. As far as jurisdiction. As far as jurisdiction, Your Honor, in the reply brief, I point out the fact that both the plaintiffs and the defendants continued to submit themselves to the jurisdiction of the Court. If at any point the Court was divested of its jurisdiction, it was clearly revested each time that the parties requested a modification of the order. In that that's true, I believe that Rule 303 is clearly implicated that after the final post-judgment order has been entered, the petitioner is given 30 days to seek appeal, which was done in this case. Moving on to the second order that the plaintiffs contended is the product of an abuse of discretion. The lower court granted National Union's petition to vacate the July 2007 order. This is really the crux of the case. The law shows that the petition to vacate rests upon the principles of right and wrong. It's based on equity. Now this is codified in Section 2-1401, but the principles upon which it rests are the principles of right and wrong. The law requires in 1401 that there must be a meritorious defense to an underlying contested claim. It must be raised when there are new facts put before the Court, and not merely when there's a new legal argument. And you must note that the petitioner was not negligent in bringing forward the petition to vacate. In this case, because there was a consent order at play, it's also relevant to say that consent orders are essentially a contract that the Court enforces. And it's based upon contractual principles. In this case, the meritorious defense put forward was not regarding a contested claim. This was a consent order when it was entered in December of 2006, and it was a consent order when it was modified in July of 2007. There was no contested claim for which a meritorious defense to be related to. It could not satisfy the requirements of the law. In addition, the primary argument set forth by National Union, and the one relied upon by the Court, was that there was a mistake in law when the modification order was granted. A mistake in law. The plaintiff and the defendant came before the Court for the modification order, and said that the defendant had been mistaken as to the amount of the policy coverage, and that there was a higher policy at issue, and that mistake justified the modification of the original consent order. The Court agreed that the equities supported that, and granted the modification order. National Union said that that legal rationale was insufficient to support that vacation of the original consent order. And the Court relied upon that in its holding, that there was an insufficient legal basis, and vacated the modification order. That all was a legal argument. There was no new facts put before the Court by National Union to say that the modification order should not have been granted. Based upon precedent, a purely legal argument should not support a petition to vacate. Now, in their response, they... What precedent is that? Your Honor, I'm going to have to rely upon my brief for that. I don't have that directly before the Court. But it is well stated in the brief. Now, National Union, in their reply, say, well, that argument's waived, because it wasn't set forth before the Court. Now, this Court knows that waiver is a doctrine that it need not follow. Waiver is a doctrine that it need not follow when there is a body of law that needs to be maintained for the sake of consistency. The plaintiffs would submit that in this case, the fact that there needs to be a factual rationale, and not merely a legal rationale, for a petition to vacate is a body of law that requires such consistency. Now, National Union has repeatedly made the claim that the plaintiff was somehow negligent in seeking its own petition to modify. The facts, however, show that the defendant, Brewer, was the individual who represented to the plaintiff his policy limits. It was his representation, and not the plaintiff's, making it out of whole cloth, that was the basis of the original consent order. Making the plaintiff somehow responsible for the defendant's misrepresentation is putting the cart before the horse, and it just does not make sense logically. You can't say that the plaintiff was negligent for believing the defendant's representation. Furthermore, if you look at National Union's argument closely, what they're saying is that the information wasn't presented to the court prior to the original 2006 order. But the 2006 order isn't even implicated. It was never contested in National Union's petition, and should not be relevant before this court. As I stated before, the primary issue before this court is equity. And equity plainly supported the modification. It was the defendant's representation. In addition, National Union had an obligation to act diligently and reasonably in pursuing its petition. As can be seen, the National Union withdrew its coverage from Defendant Brewer and didn't pursue declaratory judgment in any way. It can hardly be said that they acted reasonably or rationally in this matter. And taken the totality of the circumstances, they plainly did not satisfy the petition to vacate because they did not act diligently. As a final note regarding National Union's petition to vacate, National Union actually suggested to the court that an appropriate step that it could take would be an evidentiary hearing. And the precedent supports that, that when there are actual facts in dispute, that the court should order an evidentiary hearing to determine what the facts are. The court in this case did not do that. That is another significant reason why the court acted beyond its discretion. And I should note that the response brief of National Union does not mention this issue at all. I think it's fair to say that that issue is conceded. The third order that is the product of an abusive discretion was the Plaintiff's and Defendant's joint petition to vacate the December 2006 order. Now I won't reiterate the law pertinent to Section 2-1401, but I will say that the totality of the circumstances is what the court will look at to determine whether the party acted reasonably. In this case, the lower court felt compelled to follow the strict interpretation of the two-year time frame to bring a petition to vacate. And the court, through its own research, produced two cases that it found relevant. Those two cases, however, if one looks at them closely, equity was not implicated. Equity did not support either side. In this case, I would submit that the Plaintiff's case is very different, and that equity clearly does support the modification. I would also point out to the court that the Defendants and Plaintiffs did act reasonably under the totality of the circumstances because they sought the relief that they later sought within the two-year time frame. That is, they sought modification of the original consent order. Also, after the modification was entered, in the intervening year and a half, it wasn't possible for the Plaintiffs to pursue modification of the order because it had been granted. In effect, there was a legal disability in that the Plaintiffs could not pursue the remedy that they now seek because it had been granted for that period of time, a year and a half. I would submit that an additional period of time for which the order had been granted would be a reasonable period in which to give the Plaintiff an opportunity to seek... And what would be your authority in support of that additional time? Logic, Your Honor. I do not have a case on point for that, but I think it's certainly reasonable to perceive that as a disability. There was nothing that we could do to seek that remedy. I have a question regarding the Plaintiffs' and Brewer's joint motion filed in, I think it was June of 2009. Yes, Your Honor. It was filed in the alternative, that is, the vacate. And also, as part of that, it seems that the Court considered a stipulation, and the trial court made no ruling on a proposed stipulation, but said it would consider it further if notice was given, and the trial court didn't deal with it. What was that stipulation, and does that affect us here, since that's still apparently pending before the trial court, whatever indeed it is? Your Honor, I would submit that it is relevant. It is, of the four orders that I mentioned before, it is the last of the four orders. In that stipulation, it was, in essence, a reiteration of the stipulation entered into between the Plaintiffs and the Defendants before to raise the judgment amount from $100,000 to $500,000 in reflection of the true policy limits and the intentions of the parties. What is actually pending, though, is what I'm asking for the trial judge. I don't believe anything is currently pending. I believe that that order was a final order in that regard. There was no further action taken, I should say, Your Honor. Given that 30 days has passed from that date, and it was included in this briefing, I would say that it's included in this matter. So the trial court didn't indicate that the matter pertaining to the stipulation could be set for hearing of notice? Well, it indicated that it would not grant that order without the consent of National Union, who was the intervener, and the intervener was not going to grant that consent. So there was no point in having that hearing. It could not be granted in the court's view without having National Union's consent. And truthfully, Your Honor, that is, I think, the last of the elements of the abuse of discretion of the lower court. I don't believe that National Union needed to consent to that stipulation, or needed to play a role in the amended consent order. It conceded its position as insurer three years ago. It says that it's not responsible on the policy, and in fact, in another proceeding, it prevailed on that claim, although that is also up for appeal. But the real issue is that the order does not make National Union liable for anything. It's an order against the defendant, Defendant Brewer. If it does play a role with National Union at all, it only plays a role in that it caps National Union's liability at a certain dollar figure, but it's not enforceable against National Union. So, I can't conceive of a reason why National Union would need to consent to such an order, given that it's not liable. I have, in essence, gone through my argument. If there is further question, I will certainly entertain it. But if not, then I will step down. May it please the Court. My name is Michael Sanders, and I represent National Union. Today we have three contentions. First, this Court does not have jurisdiction to hear this appeal, because the notice of appeal was not time to file. Yes, I will. Thank you. Second, the trial court correctly granted National Union's petition to intervene and correctly vacated the July 2007 order. And third, the trial court did not abuse its discretion when it denied the plaintiff's successive motions to amend the December 2006 judgment. If for some reason I don't get to an issue, we would stand on our briefs. Turning to our first contention, this Court does not have jurisdiction to hear this appeal, because the notice of appeal was not timely filed. An order granting or denying relief under 2-1401 is a final and appealable order, and pursuant to Illinois Supreme Court Rule 304B, the party seeking to challenge that order has 30 days from which to file its notice of appeal. A party is entitled to only one post-judgment motion, and therefore successive post-judgment motions are improper when they seek to re-litigate issues that had already been adjudicated. Indeed, this Court held, in City-Otto v. Brandes, even a motion to rehear an order deciding a 2-1401 petition does not extend the time period for filing the notice of appeal, though admittedly that decision has been criticized by other districts. Nevertheless, as the Supreme Court held in Sears v. Sears, where there was no timely appeal from an order granting or denying a 2-1401 petition, an appeal from a second 2-1401 petition will not vest the appellate court with jurisdiction. In this Court, in Holloway v. Kroger, the Court held that once the Court rules on a pending 2-1401 petition, rules on the merits, a party cannot extend the time period for filing an appeal by filing a successive 2-1401 petition. As a result, this Court held that the plaintiff's second 2-1401 petition did not extend the time period for filing the appeal, and this Court, sua sponte, dismissed the appeal because the notice of appeal was not timely. This case is no different. The trial court entered an order in June of 2009 granting the National Union's petition under 2-1401. As a result, the plaintiffs had 30 days until July 6, I believe, to file their notice of appeal. Now, based on this Court's decision in City Auto v. Brandeis, the plaintiffs' motion to reconsider that was filed in June of 2009 did not extend the time period. But even putting City Auto aside, since the trial court denied the motion to reconsider on July 3, 2009,  and the notice of appeal was due on August 3, 2009, the remaining motions did not extend the time period for filing the notice of appeal. Those motions, and I think this is what Justice Turner was talking about, the plaintiffs in June filed this joint motion. Well, the Court first took it as a motion, the first part, which was a motion to reconsider. The second part was basically a successive post-judgment motion because it sought the same relief that the plaintiffs sought back in 2007, which was namely to increase the judgment from $100,000 to $500,000. It made no new arguments. And therefore, as this Court held in Holloway v. Kroger and the Supreme Court held in Sears v. Sears, since it was a successive post-judgment motion seeking to relitigate matters that had already been adjudicated, it did not extend the time period for filing the notice of appeal. So your argument is they had to file a notice of appeal by August 3, 2009, at the latest? Absolutely, at the latest. Now, the plaintiff has argued refestment. Well, refestment doesn't apply in this case. Again, in the Supreme Court's decision in Sears v. Sears, and there was another decision, ADM v. Barth, a 1984 Supreme Court decision, the Court held that refestment applies only when the parties act as if there had been no judgment entered. In other words, by their actions, they imply that they're going to allow the judgment to be set aside. And in Sears v. Sears, it held that refestment did not apply in a case just like this involving successive post-judgment motions. And in that case, the Court held that the hearing on the second post-judgment motion did not refest the court jurisdiction because it did not ignore the existence of a judgment. In fact, it was attacking a judgment. And the Court held in ADM v. Barth that the defendant's objection to the 2-1401 petition, again, was not an act of refestment. In this case, all the parties had acted as if there was a judgment entered. We didn't ignore it. We all filed 2-1401 petitions, which was an attack on a judgment. National Union acted as if it had a judgment, as if there was a judgment entered for $500,000, and we fought to say it should be $100,000. Plaintiffs argued that there was a judgment entered, but it was for $100,000, and they were seeking to increase it. National Union never consented to the Court retaining jurisdiction because, in fact, we objected to their subsequent 2-1401 motion, and we, in fact, argued that it was untimely and the Court shouldn't hear it. Therefore, under Sears v. Sears, ADM v. Barth, we did not consent to a judgment, or consent to jurisdiction, or act as if there was no judgment, and revestment did not apply. Turning to our second contention, that the trial court did not abuse its discretion when it allowed National Union to intervene and when it vacated the July 2007 order. Section 2-408 of the Code of Civil Procedure, which governs intervention, is to be construed liberally, and if a party has standing upon the considerations of timeliness, sufficiency of interest, and whether or not its interests are being protected. The Court probably found that we acted in a timely manner. We filed our first attack against that July 2007 order within about 45 days after receiving the order. We could not have acted any sooner because, first of all, despite being added to this case, we were never served. We did file an appearance in the spring of 2007 and filed a motion to consolidate this case with the corresponding declaratory case. Then the plaintiffs dismissed us, voluntarily dismissed us, and we went on with the declaratory case. The plaintiffs, despite knowing that my office, representing National Union, never sent us a copy of the petition, the July 2007 petition to vacate and increase the judgment. In fact, they waited to send us an order until September of 2007. When we got that order, we filed our petition within about 45 days. They make much of the fact that we titled our motion the petition to vacate. We didn't use the word intervention. But as the trial court found, that's really of no moment. The trial court, as you can see, I think it was in my appendix, the hearing from that original hearing, the trial court considered it himself as a petition to intervene and vacate and ultimately found we had no standing, which is an element in both intervention and in the 2-1401 petition. When this court, in 2008, reversed that decision and found that we had standing when the mandate issued, we immediately filed a motion to get on the court's docket in order to get it back in front of the judge, and we filed our petition within the time period set by the court. So we did act in a timely manner. Again, within about 45 days of receiving this order, we filed a motion. And there was no reason for us to be in there sooner because, as I said, we denied coverage to Brewer, so there's no business for us to be in that case. And the declaratory case has been found in our favor, which is now before Your Honor in a different case. Moreover, the court properly vacated the 2007 order. First of all, as we all know, a party seeking to vacate a judgment must establish that that judgment was not the result of its own lack of diligence in all the states. The National Union, in support of its motion, established that the original December 2006 judgment for $100,000 was, in fact, the result of their mistake and lack of diligence. We presented evidence that they either knew of the policy limits or that their alleged mistake was an inexcusable lack of diligence. Brewer, the insured, has an obligation under the law to know the terms and conditions of his policy. And the plaintiffs have an obligation to learn the terms and conditions of the policy, particularly when the December 2006 judgment is specifically tied to that insurance policy. And this information was not available to the judge back in July 2007 because nobody gave National Union notice despite the fact that that judgment specifically says it's to be collected from us. Now, we presented the trial court with facts, and that's why I think the trial court decided it didn't need a hearing, because we presented all this stuff to the court. We presented the court with requests to admit, answered by Brewer in the declaratory case, where he admitted and he authenticated his application, his renewal application, which he increased his policy limits from 100 to 500. We presented that to the court. We presented to the court our correspondence that told Brewer that there was no coverage and explained why, due to his misrepresentations and so forth, and we explained the policy limits. We also presented the court with Brewer's answers from the declaratory case, where he admitted his policy and he admitted the policy limits. We also presented the court with argument that the plaintiffs themselves knew of the policy, knew of the denial, and yet did nothing to try to get the policy. For example, the plaintiffs in August of 2006, the plaintiffs filed an amended complaint in the tort case against National Union, alleging specifically that National Union had denied coverage and that they, the plaintiffs, had a right to know the terms and conditions of the policy, but yet they did nothing. They didn't serve the complaint. We didn't learn about the case until months and months later in the spring. They didn't serve us at all. They didn't take it over here to the Department of Insurance and serve the complaint. If they did, they could have, in their response of pleading, in our response of pleading, they would have known the policy limits. They would have known the terms and conditions. They could have issued us discovery. And even besides adding us as a defendant, they could have issued a subpoena to us and asked for the policy. They could have asked for the underwriting file. They could have asked for our denial letter. And we showed that the plaintiffs never even served discovery on Brewer to get his policy information. Wouldn't you want to do that, particularly when the December 2006 judgment is specifically tied to the policy? Wouldn't you want to know why we denied coverage? Wouldn't you want to know the policy limits? But they never did anything. And we also presented the court with affidavits from the plaintiffs in Brewer and even later plaintiffs' counsel that essentially admitted they made a mistake and didn't explain what they did in order to learn of our policy limits. And in response in the trial court and before this court, they make no attempt to explain what they did, what due diligence they did, in order to learn the terms and conditions of the policy. Now in response, the plaintiffs belatedly argue that our argument was one of law and not fact. And as we point out in our papers, that's been waived. The plaintiffs in the trial court filed approximately, when I counted them up, seven pleadings in response to our original, from our original motion back in October of 2007 through the present. I counted them up about seven different written pleadings. This issue is not mentioned. We argued the case orally about three times, if I counted them correctly. Again, there's no mention of the word law or fact. But also, as we pointed out in our papers, the case of J.P. Morgan Chase versus Penkhauser, the trial court has a right to reconsider and vacate a petition if it later decides it was improperly granted. In that case, the second district case, the trial court originally granted a petition to vacate under 1301. I think it was a defendant filed a motion to reconsider and said it should have been 1401. The court went back, reconsidered it, and realized, yeah, you're right. He reversed his vacation of the judgment. Furthermore, we did present factual arguments, as I mentioned. We presented a request to admit. We presented documents. We presented all kinds of facts to show why the July 2007 order should never have been granted. And finally, the fact that the December 2006 judgment and the July 2007 order were consent judgments or stipulations is really irrelevant. First of all, a party, in order to amend a consent judgment, has to comply with 2-1401. And the plaintiffs talk about a contract. Well, a party seeking rescission under a mutual mistake has to show or has to establish that that mistake occurred despite the exercise of reasonable care. And I submit here, they haven't established reasonable care. As I said, they went into this December 6, 2006 judgment, or December 7, 2006 judgment, blindly. I mean, they didn't know. They didn't even ask us for our policy, didn't ask for the denial letter, didn't ask for anything. They just called up Brewer and said, what are your limits, and entered a judgment on that. I submit to you, that's not reasonable care, particularly with all the avenues that were available to learn the real policy limits. Finally, turning to our last contention, the trial court should affirm the court's orders of September 1 and September 24. First, the trial court's decision should be affirmed because the joint motions were improper successive motions, and successive post-judgment motions are completely improper, particularly when they re-litigate the same issue. Second, the trial court correctly held it was untimely because it was beyond two years. 2-1401 specifically says that it has to be filed within two years of the judgment. They were seeking to amend a judgment entered in December of 2006 by filing motions in 2009. That's beyond two years. Now, for the first time, they argued that, well, we're under some sort of disability. But what were they supposed to do between July 19, 2007 and June 4, 2009, since the trial court had actually ruled in their favor, and that was the status of the case during that time period? Are you arguing they should have filed something anyway, even though they, at that point, were prevailing in the litigation? Well, I have two responses. First of all, the Supreme Court case of People v. Caballero says that pending post-judgment motions in appeal do not hold a time period. So the Supreme Court tells us the time period is not told. Secondly, I think they could have. Frankly, if you compare my motion that was filed in October, I think it was October of 2007, and the subsequent motions, I raised the same arguments. In fact, they look a lot the same. But they had already filed a 2-1401 in July of 2007. They could have tried to file something to correct any sort of errors, even if it was possible. To be honest with you, I'm not sure. I think they were done because of the mistake. But if they had some argument. You don't think, then, the June 2009 joint motion could just be considered as an amendment to the original July 2007 2-1401 filing? I do not. I believe it's a successive motion. It's the same. They're making the same argument. And as the Court has held against Sears v. Sears, this Court, Holloway v. Broderick, it's a successive motion that is improper and does not hold a time period. I just don't understand how they could be held in position since they had prevailed in the litigation up until June of 2009, why they would be filing anything. I'm sorry. Go ahead. I want you to respond to that to correct the issue. I mean, if you compare the June motion, the later motion, it's exactly the same thing. I think they added the only difference was an affidavit of Mr. Fetus. But if they thought that was good, if they thought that's what they needed, some more affidavits to explain why the mistake occurred, why didn't they supplement it? For example, in response to my original petition filed in October, two years ago, I made the same arguments. But the Court didn't rule against them until June of 2009. But they could have supplemented, realized that they needed something more, and then supplemented. I don't know if I can follow why they should be held to realize they needed something more when they had prevailed up until June of 2009. Well, particularly when, I see my time is up. May I answer your question briefly? If Justice Connick allows it. Yes. Thank you. First of all, again, I make the same arguments. And so, I mean, I was pointing out the problems. And remember, the Court had denied my original motion based on standing. They just said I shouldn't have been there. I was screaming in from the side saying this was the problem. So why didn't they say, well, National Union, Mr. Sanders has pointed out a problem. We need to fix that problem and file a motion to amend or something. But they should not have waited. As the Court said in the Supreme Court, people versus Caballero, that doesn't total the time period. You still have to get in there and do it. So I think they should have fixed it. And, again, I think the June motion was merely a successive motion that does not total the time period because it makes the same arguments. It just flushes the model a little bit more. And this Court's already ruled on that. For any other issues, we would ask the Court to affirm the trial court in all respects. And for any issues I didn't get to, we would stand on our word. Rebuttal. Justice Turner, I think you've keyed in on the essential issue. There isn't an issue of equity at play here that can't be ignored. There was no way for us to seek the remedy that we sought in our subsequent or really, as you say, amended petition to vacate. In that, there was no way for us to satisfy the requirements of the rule. I think the disability is an applicable argument. The last point I'm here to make is that National Union continues to make the same argument that because Brewer should have known certain facts, that the plaintiff should have known certain facts. They are not identical parties and they did not have the same information and they cannot be perceived to have the same requirements placed upon them. Because they could have issued discoveries not the same as saying negligence. In this case, they were told by Brewer what the policy limits were and Brewer reiterated that to the Court. If they couldn't rely on that, I don't know what they could rely on. So, thank you. Thank you. I take the matter under advice.